(No. 42470.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
DONALD BURTON, Appellant.

*Opinion filed September 22, 1970.*

STEVEN HELFER, of Rochelle, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and JOHN B. ROE, State's Attorney, of Oregon, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE BURT delivered the opinion of the court:

Defendant, Donald Burton, was convicted of the crime of felony theft in the circuit court of Ogle County on his plea of guilty to the charge and sentenced to serve a term of one to five years in the penitentiary. Thereafter he filed a petition under the Post-Conviction Hearing Act in which he alleged in substance that his attorney who represented

him at the time the guilty plea was entered had, either inadvertently or deliberately, misinformed him concerning the punishment he would receive on a plea of guilty; that his plea had been entered only because he had been told by his counsel that he would be placed on probation for two years with the first six months to be served at the State penal farm; that he had a "meritorious defense to the charge in that he was intoxicated at the time of the alleged theft and was not attempting to permanently deprive the owner of his truck" and would not have entered the guilty plea except for the representation of his attorney. A full hearing was held upon the petition at which defendant was present and testified. He appeals from the order of the circuit court of Ogle County denying the relief sought.

At the hearing the defendant testified that on October 14, 1968, he and his wife, who had been arrested at Freeport, were brought to Oregon where they had a conference with their attorney who had been hired by defendant's mother to represent them at defendant's request. This counsel had represented defendant on previous occasions and had always been satisfactory. After the nature of the charges had been discussed with their attorney, he left them for the purpose of having a conference with the State's Attorney. When he returned he told them that he had a "deal" with the prosecutor whereby on defendant's plea of guilty to the charge of theft the State's Attorney would dismiss a charge of resisting arrest and the charge against his wife and give him six months in Vandalia and two years probation. Defendant further testified that his attorney told him that he and the State's Attorney had "shaken hands" on the deal, that he had been assured by his counsel that was what he would receive, and that it was his understanding the State's Attorney would see to it that he would receive the agreed sentence.

On cross-examination defendant stated that he was "under the impression" that the State's Attorney and judge

worked together in sentencing but admitted that he had never talked to the State's Attorney and that the latter had never promised a specific sentence. He further admitted that on the day the guilty plea was entered the judge had asked him whether any promises had been made to him and he had stated that none had been made; that the judge thereupon cautioned him that if any promises had been made they were not binding on the court. Defendant also testified that while he had been drinking at the time he took the truck, he was not intoxicated and knew what he was doing.

The testimony of defendant's wife as to what took place between them and their attorney on October 14 was substantially the same as that given by the defendant.

Defense counsel's version of what happened on that day is related in an affidavit received in evidence, as he did not appear personally. He states that the State's Attorney agreed that if his client pleaded guilty to the theft charge he would dismiss the other charges which were misdemeanors and recommend to the court a sentence of two years probation with six months confinement; that when he asked: "Supposing the Judge doesn't accept the recommendation?" the State's Attorney answered: "She will." As to his conference with his clients, defense counsel says he recommended acceptance of the proposal, telling Burton, however, the court was not bound to follow the prosecutor's recommendation but that the assurance of the State's Attorney was strongly indicative that she would do so. In his affidavit deponent further states that upon arraignment he made a statement to the court "concerning the basis" upon which the plea of guilty was made and that the court then "advised Mr. Burton that she was not bound by this understanding, and if he so realized, to which he answered affirmatively." Finally, the affidavit says that during the period between the entry of the plea and the date set for disposition the State's Attorney who had seen the probation officer's report, called defense counsel on the phone and told

him the report showed a prior conviction of a felony of which he (the State's Attorney) had not previously been aware and that he doubted that under the circumstances the court would follow his recommendation. The affidavit also states that though probation was denied by the court the State's Attorney made his recommendation as agreed and did dismiss the other charges.

The State's Attorney testified in person and his version as to the understanding between him and defense counsel is substantially the same as that related in the affidavit. However, he denied he ever told defense counsel the court would follow his recommendation, stating rather he said that assuming Burton's past record was as then represented to him, the court would normally follow his recommendation. He positively denied he had ever indicated the judge was bound by his recommendation or that he had or ever would shake hands on such a proposition as this with another attorney. He stated that he called defense counsel as soon as he saw the probation officer's report, telling him that it showed a prior conviction of felony of which he was not aware; that it was his opinion the court would not follow his recommendation and defense counsel had better get in touch with his client. Defense counsel indicated he would do so. The State's Attorney further testified that when they arrived in court for the hearing he told defense counsel again he did not think probation would be granted and indicated that if he wished to move to withdraw the guilty plea he (the State's Attorney) would not object; that defense counsel then left and came back in a few minutes at which time he indicated they wanted to go ahead and take their chances.

Donald Burton, when recalled, denied his counsel had ever told him it was unlikely that the judge would grant him probation or that he informed him of the possibility of making a motion to withdraw his plea of guilty.

Whatever of conflict there may be in the testimony

taken at the post-conviction hearing, the record as to what transpired in the original proceedings leading to defendant's sentence is perfectly clear. At the time of arraignment and before any proceedings relative to a plea had been taken, defense counsel made a preliminary statement to the court in defendant's presence in which he detailed what he described as a "tentative arrangement" between him and the State's Attorney "subject to the approval of the court". This was substantially the same understanding concerning dismissal of other charges and recommendation of sentence as previously related in this opinion. The court pointedly said it was up to the State's Attorney to decide what he wanted to prosecute but it was not her practice to decide what was to be done with a case "before the case comes into court".

The court then proceeded in approved manner to accept defendant's waiver of the right to be prosecuted by indictment and he consented to be prosecuted by information, all with approval of his counsel who indicated that he had no motions to make after a copy of the information with lists of jurors and witnesses had been served. The court then explained in detail the nature of the charge, to which defendant pleaded guilty, but before accepting the guilty plea the court carefully explained a possible penalty of one to ten years in the penitentiary. Defendant positively stated he understood the crime with which he was charged and the penalty for it. In addition, the court at this point ascertained from defendant that he was 26 years of age, had attended school through tenth grade and had worked in factories in Rockford and Sycamore as a machine operator. There followed the specific dialogue between judge and defendant in which, in response to definite questions by the court, the defendant assured her : (1) no promises had been made to him concerning this plea, (2) if any had been made he understood the court was not bound to follow them, (3) this was a voluntary plea and (4) he was satisfied with his lawyer and

his physical and mental health was good. After a stipulation by counsel that the value of the property taken exceeded $150 and defendant's persistence in his plea, the court accepted it but only after a full explanation of defendant's rights to a jury trial and a signed waiver of those rights with approval of counsel. Judgment was entered on the plea and the cause continued on defendant's application for probation which was heard and denied on November 1, 1968. At that time it was stipulated that the evidence on motion for probation would also be considered as that in a hearing in aggravation and mitigation, and sentence of one to five years was imposed.

As to any differences in the versions of the State's Attorney and defense counsel as to what transpired between them we can only say that the credibility of the testimony in a post-conviction case, as in other cases tried by the court without a jury, is a matter for the trial judge to determine, and unless something appears to show that the determination by the trial judge was manifestly erroneous, the trial judge, who had an opportunity to hear the evidence, will be upheld. (*People* v. *Wease*, 44 Ill.2d 453, 457; *People* v. *Scott*, 43 Ill.2d 135, 141; *People* v. *Caise*, 38 Ill.2d 486, 489.) In view of the totality of the circumstances in this case any differences are unimportant in any event. It is true that defense counsel was not personally present at the post-conviction hearing but he was defendant's witness and apparently Burton was satisfied to submit the affidavit. Defendant was represented at the post-conviction hearing by competent counsel and had the presence of original defense counsel been considered necessary or advisable he could have been subpoenaed. There is nothing to show he was unavailable.

In addition to any question of negligence or competency of counsel, defendant has presented in his briefs in this court claims that in the original proceedings his counsel was not given sufficient time to prepare for trial for his defense

and that in the hearing in aggravation and mitigation the court erroneously received evidence of a charge made against defendant without proof of conviction. The short answer to these contentions here is that no such assertions were made in the post-conviction petition and therefore were not considered by the trial court in passing upon the merits of the case. Under well-settled rules we are not required to entertain these questions on this appeal. We do say, however, that at best these contentions raise questions of irregularities under statutory provisions which do not involve constitutional dimension (see *People* v. *Fuca,* 43 Ill.2d 182, 185, and *People* v. *Orndoff,* 39 Ill.2d 96, 99), and that the record in this case shows that at the hearing in aggravation and mitigation the trial judge clearly stated the record in question was only of an arrest and not a conviction, thus recognizing that it was merely an accusation and did not constitute a conviction of record. Presumably the court did not count this a conviction against defendant in imposing the penalty since it will always be presumed the trial judge considered only competent evidence. The record in this case supports that view.

In conclusion we should say that there is nothing in this record which would lead us to conclude that any alleged incompetence or misconduct of counsel induced defendant's plea of guilty to the charge of theft. On the contrary, it was made voluntarily and openly after at least two warnings that defendant had no right to rely on promises by anyone and his assurance to the court that none had been made. We might also add that defendant's testimony at the post-conviction hearing quite clearly repudiates the allegation made in his petition that he had a meritorious defense to the charge. Absent a defense it cannot reasonably be said that the outcome would have been different had defendant not pleaded guilty.

The judgment of the circuit court of Ogle County is affirmed.

*Judgment affirmed.*