THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FELIX SANCHEZ, Defendant-Appellant.

First District (1st Division) No. 86—0974

Opinion filed September 21, 1987.—Rehearing denied October 20, 1987.

William P. Murphy, of Chicago, and Neil M. Nameroff, of Miami, Florida, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Mark F. Smolens, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The petitioner, who claims his name is Orlando Cambas and not Felix Sanchez, was charged by information in the circuit court of Cook County with the offenses of possessing with intent to deliver more than 30 grams of a substance containing cocaine and more than 30 grams of a substance containing methaqualone (Ill. Rev. Stat. 1983, ch. 56½, pars. 1401(a)(2), (a)(9)). After a bench trial, the petitioner was acquitted on the methaqualone charge but found guilty on the cocaine charge. The trial judge denied the petitioner's post-trial motion and sentenced him to six years' imprisonment. While his direct appeal was pending in this court, the petitioner filed the instant petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1). In his post-conviction petition, the petitioner alleged that he had been denied his constitutionally guaranteed rights to effective assistance of counsel and due process since his trial attorney had operated under a conflict of interest. The decision of the trial court was affirmed on his direct appeal, and following an evidentiary hearing, the circuit court denied his post-conviction petition. The petitioner has appealed the denial of his post-conviction petition, and we affirm.

The facts leading up to petitioner's conviction follow. Based upon information received from a reliable informant, Chicago police officers obtained and executed a warrant on January 28, 1983, to search apartment 401-E at 1016 West Balmoral, Chicago, Illinois, allegedly occupied by a male Latin known as Felix. One of the police officers executing the warrant, Fernando Correa, testified that he knocked on the apartment door and announced his office but that no one answered. According to Correa, the building security guard subsequently admitted the officers to the apartment. Correa stated that no one was inside the apartment at the time the police officers entered the apartment. However, soon after they had gained entry to the apartment, Correa testified, he heard a key in the front door and then saw the petitioner enter. Correa stated that he explained to the petitioner in Spanish the reason for their presence in the apartment, that

he asked the petitioner if he was Felix Sanchez and that the petitioner said he was. Correa also said that the petitioner had stated that his name was Felix Sanchez later that evening when he was being processed at the police station. According to Correa, the petitioner told him that he had some cocaine in the kitchen and that he also had some pills at another apartment. Upon searching the apartment, the police officers found a bag containing a quantity of white powder. The officers also recovered a telephone bill and a rent receipt for the apartment, both in the name of Felix Sanchez. Correa testified that he then took the petitioner to the other apartment, located on Sheridan Road in Chicago, where the petitioner had told him he had additional pills. Correa further testified that a Guillermo Cueto was at that apartment at the time they arrived. Correa stated that Cueto told him that he knew Felix Sanchez and that Sanchez had left a package with him. Cueto then produced, Correa said, a sealed box which Correa discovered, upon opening it, contained a plastic bag filled with thousands of pills. Correa admitted that Cueto was not placed under arrest. The parties stipulated that the white powder recovered at the Balmoral apartment was cocaine and that the pills recovered at the apartment on Sheridan Road were methaqualone.

The petitioner testified through an interpreter at both his trial and at the hearing on his post-conviction petition. According to the petitioner, his name is Orlando Cambas and not Felix Sanchez. He also claimed that he only produced pieces of identification with the name Orlando Cambas, and he denied ever telling the police at any time that his name was Felix Sanchez. Petitioner denied renting or residing in the apartment on Balmoral. He stated that he was only going to visit his friend Felix Sanchez at the time the police were conducting the raid at the apartment and denied that he had used a key to enter the apartment. The petitioner also denied saying anything to the police about cocaine or methaqualone tablets. He further denied that he was taken to Cueto's apartment on Sheridan Road by the police officer on the evening of his arrest. The petitioner testified that he had met Cueto on a prior occasion through his friend Felix Sanchez and that, according to him, Cueto would have testified that the petitioner was not Felix Sanchez, that he did not reside in the apartment on Balmoral, and that he was not present when Cueto gave the box of methaqualone tablets to Officer Correa at the Sheridan Road apartment.

Attorney James Stamos, who represented the petitioner at his trial, testified at the post-conviction petition hearing. According to Stamos, he was originally retained by Cueto in late January 1983. His

representation of Cueto, Stamos said, concerned the events that occurred at Cueto's apartment on January 28, 1983. Stamos said he was retained by the petitioner, whom Stamos knew as Orlando Cambas, approximately four weeks later. Stamos stated that he had informed the petitioner that he also represented Cueto but that he had failed to mention or explain any real or potential conflict which could arise because of the dual representation. Stamos admitted that Cueto faced criminal prosecution for possession of the methaqualone tablets, that Cueto had been cooperating with the authorities, and that, if required, he would have advised Cueto not to testify in favor of the petitioner because of Cueto's penal interest. However, when asked specifically what Cueto had told him about the case or what relationship, if any, existed between the petitioner and Cueto, Stamos invoked the attorney/client privilege.

The petitioner then offered the expert testimony of Juan Cayado, but the court rejected Cayado's testimony as irrelevant. The petitioner made an offer of proof which disclosed that Cayado, a private investigator and former police officer, would testify that he had read the record in this case and that, in his opinion, Cueto was the confidential informant in this case. Thereafter, as previously stated, the judge presiding at the post-conviction proceeding denied the petition. The judge found that the petitioner had failed to demonstrate that his attorney had labored under a conflict of interest which would have denied him effective assistance of counsel.

The petitioner contends in his appeal that attorney James Stamos, who represented him at trial, was operating under a conflict of interest which was not disclosed or explained to him. He claims that Mr. Stamos had received information favorable to his defense from Cueto and that, therefore, Mr. Stamos was ethically obligated to call Cueto as a defense witness, since Cueto's testimony would not only have impeached Officer Correa about the events of Cueto's Sheridan Road apartment, but would have completely exonerated the petitioner on the cocaine charge, since Cueto's testimony would also have shown that the petitioner was not Felix Sanchez. However, inasmuch as his attorney was simultaneously obligated not to call Cueto to protect Cueto's confidential disclosures, the petitioner claims that his attorney was, therefore, operating under conflicting obligations. The petitioner also claims that because of this conflict his attorney failed to cross-examine Officer Correa about Cueto's mysterious involvement in this case or why Cueto had not been arrested after delivering over 5,400 grams of methaqualone tablets to the police. He further contends that his attorney's failure to move for disclosure of the identity of the reli-

able informant whose information enabled the police to obtain the search warrant unmistakably demonstrates that Cueto was, in fact, the confidential informant in this case.

Summarizing from the above contentions, the petitioner argues that the existence of these conflicting obligations, his attorney's limited cross-examination of Officer Correa, and the failure of his attorney to move for disclosure of the confidential informant's identity demonstrate that his attorney failed to vigorously and effectively defend him. Accordingly, he asserts that the circuit court improperly denied his petition for post-conviction relief, and under the *per se* conflict-of-interest rule established in *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, this court must reverse his conviction. Alternatively, he argues that if this court does find that the *per se* conflict-of-interest rule applies to this case, this court should reverse his conviction, in any event, since the record clearly demonstrates that he was in fact prejudiced by his attorney's conflicting professional obligations.

The State, on the other hand, contends that the trial court properly dismissed the post-conviction petition since the record demonstrates that no conflict of interest actually existed here. The State argues that attorney Stamos' commitment to Cueto ended long before the petitioner's trial began, that the petitioner was aware that his attorney also represented Cueto at the time he retained him, and that the attorney's professional relationship with Cueto had no actual effect on his representation of the petitioner at trial and did not prejudice him. The State asserts that the petitioner's claim that Cueto was the confidential informant is mere speculation, and there is no evidence in the record demonstrating that Cueto served in such capacity. Hence, the State urges this court to affirm the order of the circuit court dismissing the post-conviction petition.

 The right to effective assistance of counsel is guaranteed by the sixth and fourteenth amendments of the United States Constitution and by article I, section 8, of our constitution. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *People v. Ash* (1984), 102 Ill. 2d 485, 495, 468 N.E.2d 1153, 1157.) This right entitles the accused to the undivided loyalty of an attorney, free from any conflict of interest. (*People v. Free* (1986), 112 Ill. 2d 154, 492 N.E.2d 1267, *cert. denied* (1986), 479 U.S. 871, 93 L. Ed. 2d 170, 107 S. Ct. 246; *People v. Dace* (1987), 153 Ill. App. 3d 891, 506 N.E.2d 332.) Permitting defense counsel to represent conflicting interests or to discharge inconsistent obligations jeopardizes counsel's loyalty to the defendant and could make counsel either unwilling or unable to vigorously represent the accused. (See *People v. Washington*

(1984), 101 Ill. 2d 104, 461 N.E.2d 393, *cert. denied* (1984), 469 U.S. 1022, 83 L. Ed. 2d 367, 105 S. Ct. 442; *People v. Dace* (1987), 153 Ill. App. 3d 891, 506 N.E.2d 332; Ehrmann, *The Per Se Conflict of Interest Rule in Illinois*, 66 Ill. B.J. 578 (1978).) Accordingly, in *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, Illinois adopted a *per se* conflict-of-interest rule, which recognizes an accused's right to conflict-free counsel. In such a situation, the accused need not demonstrate prejudice in order to obtain a reversal of his conviction if his counsel, whether appointed or retained, has labored under an actual or potential conflict of professional interest without the accused's knowledgeable assent to such conflict. (*People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441; see *People v. Free* (1986), 112 Ill. 2d 154, 492 N.E.2d 1267; *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393; *People v. Dace* (1987), 153 Ill. App. 3d 891, 506 N.E.2d 332; *People v. Nuruddin* (1986), 145 Ill. App. 3d 778, 495 N.E.2d 1315; *People v. Palmer* (1986), 141 Ill. App. 3d 234, 490 N.E.2d 154.) Where a *per se* conflict of interest is not established, the defendant must demonstrate the existence of an actual conflict of interest and demonstrate actual prejudice before a new trial is granted. (*People v. Free* (1986), 112 Ill. 2d 154, 492 N.E.2d 1267.) Additionally, like most rights, an accused may waive his right to counsel free from conflicts but such waiver must be made knowingly, *i.e.*, the accused must be apprised of the existence of the potential conflict and its significance before he will be held to have waived his right to the absolute loyalty of his attorney. *People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579, *cert. denied* (1987), 479 U.S. ___, 94 L. Ed. 2d 180, 107 S. Ct. 1329.

Illinois case law reveals a variety of situations in which *per se* conflicts have been found. In *Stoval*, the supreme court reversed the defendant's conviction because his court-appointed attorney's law firm had represented the burglary victims there in unrelated matters, and the attorney himself had represented the victims in the past, and his firm continued to represent the victims at the time of the defendant's trial. There was no need for the defendant to show actual prejudice in that situation since his attorney was subject to a possible deference to the presumed desires of the victims, whose interests would necessarily conflict with those of the defendant.

*Per se* conflicts have also been found to exist in the following cases: *People v. Meyers* (1970), 46 Ill. 2d 149, 263 N.E.2d 81, where the defense counsel also represented defendant's wife for a contingent fee in her dramshop action, and where the wife's recovery and attorney fees would have increased proportionately with the length of the defendant's sentence; *People v. Coslet* (1977), 67 Ill. 2d 127, 364

N.E.2d 67, where the defense counsel also represented the administrator for the murdered victim's estate and the estate would benefit financially with defendant's conviction; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569, where the defense counsel had previously appeared on behalf of the State in the same criminal proceeding; *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345, where the defense counsel also represented the State as a special assistant Attorney General in a worker's compensation case; *People v. Robinson* (1980), 79 Ill. 2d 147, 402 N.E.2d 157, where the defense counsel simultaneously represented a prosecution witness in an unrelated matter; *People v. Holmes* (1987), 155 Ill. App. 3d 562, 508 N.E.2d 405, where the defense counsel previously represented key prosecution witness in unrelated criminal matters; *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 366 N.E.2d 394, where the defense counsel had previously represented prosecution witness at an involuntary commitment proceeding; *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393, where the defense counsel was required to cross-examine a prosecution witness whose veracity and credibility the attorney normally vouched for when acting as a part-time village prosecutor; *People v. Palmer* (1986), 141 Ill. App. 3d 234, 490 N.E.2d 154, where the defense counsel had been retained by the complaining witness to represent the defendant; and *People v. Dace* (1987), 153 Ill. App. 3d 891, 506 N.E.2d 332, where the defendant and the prosecution witness were represented by different assistant public defenders who were also partners in private practice.

These cases demonstrate that *per se* conflicts arise where defense counsel has professional commitments to others having interests clearly antagonistic to those of the accused. *Per se* conflicts arise because defense counsel's professional commitments to others would by their nature subject counsel to subtle pressures which could adversely affect counsel's representation of the accused. Also, the above cases indicate a *per se* conflict may be created where defense counsel's potential fee interest in another matter weighs directly against the defendant's interests.

■ We find after examining the record here that the invocation of the *per se* rule is not warranted. There is no evidence in the record to suggest what Cueto's interests were, or the nature of Stamos' representation, or whether Cueto's interests would necessarily be antagonistic to the petitioner's. The most that could be said concerning Cueto is that he might have been prosecuted for his involvement in this case. While the appearance of a conflict automatically arises where defense counsel also represents the victim, a key prosecution

witness, or where the attorney is affiliated with an opposing party, no conflict necessarily arises merely because defense counsel represents an individual having a penal interest in the same matter for which the defendant stands trial. Nor is there any evidence that counsel's ethical obligation to Cueto necessarily subjected him to subtle pressures which could adversely affect his representation of the petitioner. While it is true that such pressure could have arisen if Cueto had testified for the prosecution and counsel was required to cross-examine or to impeach him (see *People v. Holmes* (1987), 155 Ill. App. 3d 562, 508 N.E.2d 405; *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 366 N.E.2d 394), the State here never attempted to call Cueto as a prosecution witness.

The fact that the State could have brought criminal charges against Cueto in this matter makes this case more analogous to those where a single attorney represents multiple defendants. Joint representation of codefendants is not *per se* violative of the right to the effective assistance of counsel. (*People v. Cedillo* (1986), 142 Ill. App. 3d 849, 852, 492 N.E.2d 227, 230.) Joint representation is permitted because "[a] common defense often gives strength against a common attack." (*Glasser v. United States* (1942), 315 U.S. 60, 92, 86 L. Ed. 680, 710-11, 62 S. Ct. 457, 475 (Frankfurter, J., dissenting).) Therefore, the *per se* conflict rule does not apply to cases involving joint representation of codefendants (see *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63), and the accused must then demonstrate that an actual conflict of interest affected the adequacy of his representations to establish a claim of ineffective assistance of trial counsel. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 349-50, 64 L. Ed. 2d 333, 347, 100 S. Ct. 1708, 1718; *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.

■ Additionally, courts have applied the joint representation rule where defense counsel's other clients, while not codefendants, had cases that were sufficiently interrelated with the defendant's to warrant application of the joint representation rule. (See *People v. Cunningham* (1985), 107 Ill. 2d 143, 481 N.E.2d 722 (clients charged with committing separate offense against same victim); *United States v. Mavrick* (7th Cir. 1979), 601 F.2d 921; *People v. Cedillo* (1986), 142 Ill. App. 3d 849, 492 N.E.2d 227 (clients prosecuted in separate proceedings for charges arising out of same occurrence).) Here, defense counsel's representation of Cueto concerned Cueto's delivery of contraband to the authorities which was the basis of some of the charges against the petitioner. Under the circumstances, the cases of the peti-

tioner and Cueto were so interrelated that application of the joint representation rule governing joint representation and not the *per se* conflict rule is warranted.

■ The essence of the petitioner's claim here is that a lawyer who was not laboring under the conflict of interest alleged would have presented the testimony of Cueto which, petitioner asserts, would have been favorable to him. His contention that Cueto would have provided exculpatory testimony is unsupported by the record before this court, and, additionally, the petitioner failed to present Cueto as a witness or to submit Cueto's affidavit at the post-conviction hearing. Nevertheless, the petitioner claims that Cueto would have testified that the petitioner is not Felix Sanchez and would have impeached Officer Correa's testimony. However, it is equally plausible, as the State contends, that Cueto's testimony may not have helped the petitioner's case or could possibly have damaged his defense.

Furthermore, the attorney who had represented the petitioner at trial testified at the post-conviction hearing that, due to Cueto's penal interest in this case, he would have advised Cueto not to testify at the petitioner's trial. For this court to accept the petitioner's argument we would have to find that, if the petitioner and Cueto had been represented by separate counsel during the proceedings here, the petitioner's attorney would have procured Cueto's testimony despite the fact that Cueto's attorney would have advised his client not to testify. We would also have to find that this testimony once provided would have been favorable to the petitioner. Based upon the record before us, this would be entirely speculation and conjecture since there is no evidence to support these conclusions or to conclude that an actual conflict of interest occurred at the petitioner's trial. Under such circumstances, we find no reason to disturb the trial court's judgment that no conflict existed merely on the basis of petitioner's asserted hypothetical or speculative conflict of interest. See *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157; *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.

■ The petitioner also raises several other contentions in this appeal, among which are the contentions that the judge at his trial had considered certain statements which he claims should have been excluded, that the State failed to prove him guilty beyond a reasonable doubt and that the trial court erroneously denied his motion for a new trial based on newly discovered evidence. However, these contentions were not raised as grounds for relief in the post-conviction petition, nor were they addressed at the post-conviction hearing. Accordingly, we will not now entertain these matters in this appeal. See *People v.*

*Burton* (1970), 46 Ill. 2d 135, 142, 262 N.E.2d 917, 920.

Therefore, for the reasons stated above, the judgment of the circuit court of Cook County denying the post-conviction petition is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.