THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PERCY CLAYBOURN, Defendant-Appellant.

First District (5th Division)   No. 1—88—1968

Opinion filed November 15, 1991.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and Mary Brigid Kenney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendant Percy Claybourn was found guilty of aggravated criminal sexual assault and armed robbery. Judgment was entered on two counts of aggravated criminal sexual assault and one count of armed robbery, and defendant was sentenced to concurrent terms of 28 years. On appeal, defendant contends that: (1) he was denied a fair trial on the charge of aggravated criminal sexual assault because the jury issues instruction on that charge omitted an essential element of the offense; (2) the prosecutor's comments in closing argument served to shift the burden of proof, tended to call attention to the defendant's failure to testify, and misstated the law; (3) he was denied his constitutional right to the effective assistance of trial counsel where counsel failed to object to improper argument and testimony presented by the State; and (4) he was denied his constitutional right to a conflict-free counsel at post-trial proceedings.

The evidence adduced at trial is as follows. Leon Holmes testified that July 7, 1987, he drove to Garfield Park with his girl friend, T.M. At approximately 1:30 a.m., defendant reached through the open passenger window of Leon's car and told Leon and T.M. that if they moved, he would shoot them. Leon got his first glimpse of defendant's face when defendant leaned into the car and held his face approximately six inches to one foot from Leon's face. Leon saw that defendant held a knife with a three- to four-inch blade in his right hand. In addition, defendant patted his waist and said that he had a .9 millimeter pistol which he would use if Leon or T.M. moved. Leon never saw the gun.

Defendant pushed Leon's face down and demanded money. After Leon responded that he had no money, defendant held the knife at the back of Leon's neck while he searched Leon and the car. Defendant ordered Leon to give him his jewelry, and Leon handed defendant his two gold neck chains and two gold rings. While still holding the knife at Leon's neck, defendant fondled T.M.'s breasts. Defendant then opened the rear passenger door and entered the car. He reached up T.M.'s dress and fondled her breasts, vagina and rectum. Defendant then ordered Leon and T.M. to undress and put their clothes in the back seat. Defendant ordered T.M. to prop her leg on the steering wheel and he rubbed her vagina for 15 to 20 minutes. Defendant then told Leon and T.M. to lie down on their stomachs, Leon on top of T.M. Defendant ordered them to remain still or he would shoot.

After Leon heard defendant walk away, he dressed and drove east looking for defendant. Leon and T.M. spotted defendant, and stopped their car. Defendant crossed in front of their car and then dove into a grey, two-door Chevy through an open window. Defendant drove away and Leon and T.M. followed. During the ensuing chase, defendant's car caught on fire. Defendant exited the car and yelled that his car was on fire. From two car lengths away, Leon hollered at defendant to return his jewelry. Defendant put the jewelry on the ground and backed away. T.M. retrieved the jewelry, and returned to the car. Defendant then ran down the street, and Leon and T.M. pursued him in their car. Defendant escaped by jumping a fence but while doing so, his shoe came off. He retrieved his shoe and ran away limping. When Leon and T.M. returned to defendant's burning car, the police had just arrived. Leon told the police that defendant was a black male, age 25 to 28, with short hair, a mustache, weighing approximately 160 to 165 pounds and wearing a beige jacket and blue jeans. On July 17, 1987, Leon viewed a lineup and identified defendant as the attacker.

T.M.'s testimony at trial corroborated Leon's testimony and she also identified defendant as her attacker. In addition, T.M. testified that before she was made to undress, the defendant put his hand through the top of her panties and moved his finger in and out of her vagina for about five seconds. He then put his finger into her rectum for two or three seconds. After she undressed, defendant put his hand into her vagina while her leg was propped up against the steering wheel. T.M. also stated that when defendant jumped the fence, his foot got caught in the fence.

Officer Boudreau testified that after the fire was put out, he examined the car to determine who owned it and whether it had been

reported stolen. The officer determined that the car had not been reported stolen, nor were there signs of tampering to indicate that the car had been stolen. Detective Kato testified that when he arrested the defendant on July 17, 1987, defendant had a large wound on the back of his right heel and he was limping.

Defendant stipulated that the burned car was registered to him. Defendant called Officer Jarocki to testify that defendant had reported his car stolen on July 7, 1987, at approximately 3:35 a.m.

■ Defendant first maintains that his aggravated criminal sexual assault conviction must be reversed because the jury was not fully instructed on one element of the offense, use of a dangerous weapon. Although defendant did not object to this erroneous instruction, the failure to correctly instruct the jury on the elements of the crime charged constitutes plain error. (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.) We therefore address this issue.

The issues instruction given to the jury in this case reads as follows:

> "To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:
>
> First: That the defendant committed an act of sexual penetration upon [T.M.]; and
>
> Second: That the act was committed by the use of force or threat of force.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

It is undisputed that the instruction was deficient because it did not inform the jury that it should find defendant guilty of aggravated criminal sexual assault only if the State proved beyond a reasonable doubt the aggravating factor that "the accused displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim *** to believe it to be a dangerous weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(1).) The instruction as given only informed the jury of the elements of the lesser included offense of criminal sexual assault. We therefore reduce defendant's aggravated criminal sexual assault conviction to a criminal sexual assault conviction. The record reveals that in imposing defendant's sentence, the trial court considered it an aggravating fac-

tor that defendant committed two separate and distinct crimes. The trial court stated:

> "After you committed that robbery, you could have walked away, and certainly armed robberies are bad and you would have disturbed the peace and society, but it would not have been as disruptive and as jarring as once you have completed your robbery, then getting in there to get your kicks."

This aggravating factor is still present regardless of whether defendant was convicted of aggravated criminal sexual assault or criminal sexual assault. Accordingly, while we affirm defendant's conviction and 28-year sentence for armed robbery, we vacate his 28-year sentence for aggravated criminal sexual assault and remand for the trial court to impose a new sentence within the statutory range for defendant's modified conviction of criminal sexual assault.

Defendant next contends that the State's comments in closing argument served to shift the burden of proof, tended to call attention to the defendant's failure to testify on his own behalf, and misstated the law, thereby denying him a fair trial. Defendant maintains that the prosecutor called attention to his failure to testify when he began his closing argument by stating "you have heard all of the evidence in this case, that witness chair is now silent, there will be no more testimony." Defendant also claims that the prosecutor focused on defendant's failure to testify when he stated that the victims' testimony of what occurred inside their car stood "uncontradicted" and that the "uncontradicted" testimony of one of the two victims was sufficient to convict defendant.

A prosecutor may not comment directly or indirectly on defendant's failure to testify in his own behalf. (*People v. Starks* (1988), 169 Ill. App. 3d 588, 523 N.E.2d 983.) However, a prosecutor may describe the State's evidence as uncontradicted, even if the defendant is the only one who could have contradicted it, provided it was not intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify. *People v. Lyles* (1985), 106 Ill. 2d 373, 478 N.E.2d 291.

██ It is often not easy to determine the line between permissible comments on testimony that stands uncontradicted and references to a defendant's failure to testify. Here, the line is indeed close, particularly in light of the prosecutor's comment that the witness chair is now silent. (See *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490 (Prosecutor made direct reference to defendant's failure to testify when prosecutor reviewed the testimony of defense witnesses and then stated "no one else testified").) We conclude that the

prosecutor's comment that the witness chair is now silent did draw attention to the defendant's failure to testify, but that the error was harmless beyond a reasonable doubt because the evidence of defendant's guilt was overwhelming. Two eyewitnesses identified defendant as the attacker. Both eyewitnesses had an adequate opportunity to view their attacker, each made an independent lineup identification, and each made an in-court identification. In addition, the victims testified that as defendant attempted to escape, he caught his foot on a fence. The arresting officer and photographs taken at the time of defendant's arrest demonstrate that defendant did in fact have an ankle injury.

■ Defendant also contends that the following comment by the State improperly focused on defendant's failure to call witnesses on his behalf.

> "PROSECUTOR: Now they want you to somehow find him not guilty of armed robbery and aggravated criminal sexual assault because for some reason we didn't have a doctor come in and talk about the injury on his leg. Well, they have subpoena powers and they can bring in a doctor or anybody to say you know what—
>
> DEFENSE COUNSEL: Judge, the defense does not have the burden to prove anything.
>
> THE COURT: Overruled. You raised the issue, they are entitled to comment on it.
>
> PROSECUTOR: You know [sic] he got that, they could have called in a family doctor or anybody to say you know he got that on the 4th of July, he didn't get that on the 7th of July, or a doctor, they could come in and say that injury is three weeks old. That didn't happen, why because it is in a position that's consistent with what the victims said he sustained going over that fence."

Defendant cannot complain of statements which have been invited by his counsel. (*People v. Webster* (1988), 175 Ill. App. 3d 119, 529 N.E.2d 741.) While the State may not ordinarily comment on defendant's failure to call witnesses, such comments are permitted when made solely in response to defense counsel's own reference to the State's failure to call those witnesses. (*People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612.) The record reveals that the comment by the prosecutor in rebuttal was invited by defense counsel's closing argument. Leon testified that when defendant escaped by hopping a fence, defendant lost his shoe and ran away limping. T.M. testified that when defendant jumped the fence, his foot got caught. Further-

more, People's exhibits numbers 6 and 7 indicate that defendant had an ankle injury when he was arrested 10 days after the attack. In closing argument, defense counsel raised the question as to the age of the wound. Defense counsel argued that the photographs mean nothing except that defendant had an ankle injury on the date of his arrest because there had been no expert testimony as to the age of the injury. Accordingly, in rebuttal, the prosecutor properly pointed out that the defense could also have called an expert or family member to testify that the injury occurred before or after the date of the assault.

■■ Defendant also contends that the prosecutor misstated the law when he defined the offense of aggravated criminal sexual assault. In closing argument, the State made the following remarks:

> "Aggravated criminal sexual assault in our State is rape. ***
> [A] woman can be raped *** when any part of one person makes an intrusion into the sexual organs or anus of another person. That is the definition of aggravated criminal sexual assault, and his Honor will so instruct you.
> ***
>
> Under our law we don't even have to have a knife for there to be a rape, we don't have to have a gun for there to be rape because rape occurs when this intrusion takes place through the use of force or threat of force.
> ***
>
> When you get the law you will see the term force or threat of force or violence as to the counts of aggravated criminal sexual assault. So even though he doesn't have the gun, the threat of having the gun is sufficient for the charge of aggravated criminal sexual assault."

Defendant contends that these statements of the law by the prosecutor were improper in that they fail to mention that defendant can only be found guilty of aggravated criminal sexual assault if he had a weapon. We find no error in these comments since the prosecutor was simply defining sexual penetration and explaining that criminal sexual assault is rape. Moreover, the prosecutor did discuss an aggravating factor necessary to elevate an offense from criminal sexual assault to aggravated criminal sexual assault when he stated that the defendant's threat of having a gun is sufficient to support a conviction for aggravated criminal sexual assault.

Defendant next contends that he was denied his right to effective assistance of trial counsel. In order to establish ineffective assistance of counsel, defendant must show that counsel's performance was so deficient as to fall below an objective standard of reasonableness and

that the deficient performance so prejudiced the defendant as to deny him a fair trial. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

Incompetency of trial counsel is not established by mere failure of counsel to object to inadmissible evidence. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) The decision of when to object to evidence is generally considered a matter of trial strategy. *People v. Clark* (1987), 160 Ill. App. 3d 877, 513 N.E.2d 937.

Defendant first maintains that trial counsel performed unreasonably because trial counsel did not raise a hearsay objection during Officer Kato's testimony. It was undisputed at trial that the offender used defendant's car to flee from the scene of the crime. The defense presented a theory that the offender was someone who had stolen defendant's car on the evening of the offense. Defendant reported to Officer Jarocki that his car had been stolen from his place of employment at 6644 South Ashland. However, the State elicited testimony from Officer Kato that when Kato went to the address reported as defendant's place of employment, there was no business there and neither of the two people present at the address knew defendant. Defendant contends that Kato's testimony of what those unidentified people told him was impermissible hearsay which prejudiced the defendant by raising the inference that defendant had lied to the police.

■ While this may have been impermissible hearsay, we find that it did not unduly prejudice the defendant since the record reveals other evidence which raised the inference that defendant had lied to the police. Officer Jarocki testified that defendant appeared very nervous as he was giving the officer the information on his stolen vehicle. Furthermore, while defendant originally told Officer Jarocki that his car was stolen from his place of employment, he later changed his story and said that he wasn't sure whether he had left the car at work or at home. In addition, Officer Kato testified that there was no business located at the address given by defendant as his place of employment. Officer Jarocki also testified that the telephone number given by defendant as his work number did not correspond to the address given by defendant as his place of employment. Accordingly, we find that Officer Kato's testimony as to the fact that the people at the South Ashland address had never heard of defendant did not unduly prejudice defendant, and trial counsel's failure to object to such testimony did not deny defendant effective assistance of counsel. Defendant cannot establish that but for the alleged error the outcome of the trial would have been different.

■ Defendant also claims that he was denied effective assistance of counsel by trial counsel's failure to object to three improper remarks by the prosecutor which improperly focused on defendant's failure to testify. Since the characterization of evidence as uncontradicted does not always draw attention to defendant's failure to testify on his own behalf (*People v. Lyles* (1985), 106 Ill. 2d 373, 478 N.E.2d 291), we conclude that it was not professionally unreasonable for trial counsel to forego any objection to the prosecutor's characterization of the State's case as uncontradicted. Furthermore, as we have previously noted, any error in the prosecutor's comment that "the witness chair is now silent" is harmless beyond a reasonable doubt because evidence of defendant's guilt was overwhelming.

Finally, defendant maintains that he was denied his right to conflict-free post-trial counsel. After learning that defendant had filed a complaint against her with the Attorney Registration and Disciplinary Commission, Assistant Public Defender Viola Rouse moved to withdraw as counsel. The court allowed Rouse's motion to withdraw and appointed another public defender, Steven Helis, to represent defendant in the post-trial proceedings. Defendant contends that the appointment of Helis violated his right to conflict-free counsel since Helis and Rouse shared the same courtroom.

The constitutional guarantee of effective assistance of counsel includes the defendant's right to enjoy the attorney's undivided loyalty, free from conflicting interests or inconsistent obligations. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Free* (1986), 112 Ill. 2d 154, 492 N.E.2d 1269.) There is no *per se* conflict of interest when one public defender must argue the ineffective assistance of counsel of another public defender. (*People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617.) Instead, the court should determine, on a case-by-case basis, whether there are any circumstances peculiar to the case which indicate an actual conflict of interest. (*Banks*, 121 Ill. 2d 36, 520 N.E.2d 617.) This analysis first requires the trial court to determine whether a *per se* conflict exists, so as to preclude representation. *Per se* conflicts exist where defense counsel has professional commitments to others clearly antagonistic to the interests of the accused. (*People v. Sanchez* (1987), 161 Ill. App. 3d 586, 515 N.E.2d 213.) If no *per se* conflict exists, the defendant must show the existence of an actual conflict and actual prejudice resulting from the appointed attorney's representation. *Sanchez*, 161 Ill. App. 3d at 594, 515 N.E.2d at 213.

■ This court examined the relationship between assistant public defenders Helis and Rouse in *People v. Vaughn* (1990), 200 Ill. App.

3d 765, 558 N.E.2d 479. In *Vaughn,* defendant filed a *pro se* motion to vacate his guilty plea, alleging that Rouse had rendered ineffective assistance of counsel. The trial court offered to appoint Helis to represent defendant, but defendant refused to accept representation from Helis because Helis had been Rouse's trial partner when the case was first heard. Although the record in *Vaughn* did not indicate that Rouse and Helis were indeed partners at the time the case was first heard, the court took judicial notice of the record on appeal in *Claybourn,* the instant case, which does in fact reveal a working relationship between the two attorneys at the time in question. The court found persuasive the comment made by Rouse in the instant case in which she referred to Helis as her "partner in this courtroom." The *Vaughn* court, however, stated no opinion as to the specific working relationship of the two attorneys or whether that relationship created a conflict of interest that precluded Helis from providing the defendant with unfettered advocacy. Instead, we remanded the case to the trial court for a determination as to whether their working relationship precluded Helis from providing the defendant with conflict-free representation. *Vaughn,* 200 Ill. App. 3d at 769.

Likewise, we remand the instant case to the trial court for a determination as to whether the working relationship between Rouse and Helis violated defendant's right to conflict-free counsel. Should the court determine that the facts and circumstances indicate a conflict of interest precluding Helis' representation, defendant's sentence would be vacated and the trial court is then instructed to appoint conflict-free counsel and conduct new post-trial proceedings. Should the court find no conflict of interest, a new sentencing hearing is to be conducted only on defendant's criminal sexual assault conviction.

Accordingly, defendant's conviction and sentence for armed robbery are affirmed. Defendant's conviction for aggravated criminal sexual assault is modified to a conviction for criminal sexual assault. His sentence for aggravated criminal sexual assault is vacated and this cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and modified in part; and vacated and remanded in part.

MURRAY and GORDON, JJ., concur.