(No. 40914.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ALBERT STOVAL, Appellant.

*Opinion filed May 29, 1968.*

HOUSE, J., SOLFISBURG, C.J., and KLINGBIEL, J., dissenting.

DAVID S. BROWN, of Chicago, appointed by the court, for appellant.

WILLIAM R. KETCHAM, State's Attorney, of Elgin, (W. BEN MORGAN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

After a jury trial, in the circuit court of Kane County, the defendant, Albert Stoval, was found guilty of the crimes of burglary and theft of jewelry having a value of more than $150. The defendant was sentenced to the Illinois State Penitentiary for not less than one year nor more than six years. Subsequently, the defendant filed a petition in the Kane County circuit court seeking relief under the Post-Conviction Act. After a hearing defendant's petition for relief was denied and the defendant now appeals that judgment to this court under Rule 651.

On January 10, 1965, at approximately 9:00 P.M., the display window of "Navarro's—The Diamond House Limited," of Aurora, was smashed and jewelry valued at $350 was taken. A cab driver named Buerger was about 75 feet from the store and witnessed the burglary. Buerger saw the man, who wore a dark jacket and dark slacks, duck into an adjacent alley after the burglary. He drove his cab to the exit of the alley and saw the suspect emerge from the alley and disappear around the street corner. At that time an Aurora police car arrived on the scene, and Officer Leifheit, too, observed the suspect turn the corner.

Shortly, thereafter, the defendant was arrested in a tavern located on the street into which the suspect had fled. Stoval conformed to the general description of the man who had been observed running down the street and

he wore similar clothing. The defendant was taken to the burglary scene and there he was searched and jewelry, which it was ascertained had been taken in the burglary, was found in the defendant's jacket. Later, at the police station, the cab driver, Buerger, identified the defendant as the man he had seen running from the scene.

The defendant was indicted for burglary and theft and counsel was appointed to represent him. After a motion to suppress the evidence produced by the search of his person was denied, the defendant on June 18, 1965, pleaded guilty to the charges. He applied for probation and the court after a hearing denied the application and sentenced the defendant to one to four years in the penitentiary.

On June 28, 1965, the defendant moved to vacate the judgment and sentence on the ground that he had pleaded guilty to the charges only because his attorney had represented to him that the State would recommend probation. The State had opposed his application for probation. The court granted the motion, relieved the attorney who had been appointed and, reinstating the case on the trial call, appointed another attorney.

Three weeks later, the defendant was tried before a jury and found guilty of the crimes charged. He was sentenced by the court, this time to serve one to six years in the penitentiary.

The defendant on this appeal claims that his conviction should be nullified because of constitutional errors, but it will be necessary for us to consider only one of the errors asserted, *viz.*, that the defendant was denied the effective assistance of counsel at his second trial.

The right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel. (*Glasser* v. *United States,* 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) In *Porter* v. *United States* (5th cir.), 298 F.2d 461, it was said: "The Constitution assures a defendant effective representation by counsel

whether the attorney is one of his choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others."

Here, the law firm of which the defendant's second appointed counsel was a member, had represented both the jewelry corporation (the store which had been burglarized) and Navarro (the owner). Too, counsel had himself personally represented the Navarro Jewelry Store and Navarro, individually, in the past. At the present time the law firm continues to represent both the jewelry store and Navarro.

Under similar circumstances (*i.e.*, where the defendant's counsel represented the victim of the burglary in an unrelated civil suit) a United States District Court recently in *United States* v. *Myers*, (E.D. Pa. 1966), 253 F. Supp. 55, 57, found that the defendant's constitutional right to counsel was abridged, stating: "It takes no great understanding of human nature to realize that the individuals who had been burglarized might be less than happy and might go so far as to remove the attorney from their good graces if this defendant were acquitted or received a light sentence or were placed on probation. Moreover, if the case had gone to trial it might have meant an investigation involving the Carpenters [the owners of the store which had been burglarized] and even cross-examination of them on the stand. The entire situation could be very embarrassing for the lawyer who is naturally interested in having the legal business of the Carpenters, especially when they are much more able to compensate him for his services than the defendant. The circumstances here are such that an attorney cannot properly serve two masters. * * * [H]is [defendant's] right to counsel under the Constitution

is more than a formality, and to allow him to be represented by an attorney with such conflicting interests as existed here without his knowledgeable consent is little better than allowing him no lawyer at all. See *Gideon* v. *Wainright,* 372 U.S. 335 (1963), 9 L. Ed. 2d 799, 83 S. Ct. 792. This situation is too fraught with the dangers of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of relator's rights whether or not it in fact influences the attorney or the outcome of the case."

There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice. *Glasser* v. *United States,* 315 U.S. 60; *Goodson* v. *Peyton* (4th cir.), 351 F.2d 905.

It cannot be said that there was a knowing waiver by the defendant of his right to representation by counsel unhindered by any conflict of interests. The record shows that the attorney did advise the defendant of his representation of the corporation and Navarro. It shows further that the trial court added:

"THE COURT: You understand it is the People of the State of Illinois against you?

DEFENDANT STOVAL: Yes.

THE COURT: As far as the Navarro Jewelry Store is concerned it isn't a party in the case. You understand? .

DEFENDANT STOVAL: Yes.

THE COURT: Is there any question or does it make any difference to you there is any connection?

DEFENDANT STOVAL: No."

The Supreme Court as long ago as *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, declared: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

It cannot be said, judging by this record, that the defendant was adequately informed of the significance of conflict of interests so far as his appointed attorney was concerned and that he understood how a conflict could affect, sometimes subtly, a client's representation. The difficulty in appropriately advising an accused of this right almost directs that counsel, especially one appointed, be free from any such conflict. Therefore, this case must be returned to the circuit court for retrial.

We reverse the judgment of the circuit court of Kane County denying defendant's petition and reverse the judgment of conviction in the original trial and remand the cause to the circuit court of Kane County for further proceedings consistent with this opinion.

*Reversed and remanded.*

Mr. JUSTICE HOUSE, dissenting:

The majority opinion points out nothing in the record to show prejudice or lack of proper representation. On the contrary, it concedes that there is no showing that

appointed counsel failed to conduct the defense of the defendant with diligence and resoluteness. Nevertheless, the conviction is reversed, apparently adopting defendant's thesis that he was denied effective assistance of counsel.

The only applicable precedent cited is a Federal district court case, (*United States* v. *Myers,* 253 F. Supp. 55,) which in no way binds this court. The *Myers* case, in turn, relies on *Gideon* v. *Wainright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, but there the defendant was wholly denied assistance of counsel. There is no Illinois case so holding nor does my research develop such a precedent from any other State jurisdiction.

By education, training and practice members of the legal profession have been inculcated with the principle of objectivity. It seems unfair to the individual lawyer, who here accepted appointment as a public duty, and unfair to the profession generally to hold, in effect, that there is either a presumption of prejudice or that there is prejudice *per se* when a lawyer defends an indigent in a crime involving theft from a client of the lawyer's law firm.

Assuming *arguendo* that such representation is *per se* prejudicial, and I do not so concede, the conviction should stand because there was knowledge of the facts. As the majority opinion notes, the record shows that counsel advised the defendant of his representation of the burglarized corporation and its managing officer, and the trial judge questioned the defendant on the connection. In my opinion there was a knowing waiver of any possible conflict in the representation of the defendant by this counsel.

The defendant first pleaded guilty and was sentenced for not less than one nor more than four years. His motion to vacate the judgment on the ground that his counsel had represented that the State would recommend probation was granted and other counsel was appointed. He was then convicted at a jury trial and sentenced to serve one to six years. Thus, by his strategy, defendant will now have had

three different opportunities for a lighter sentence if the new trial granted to him again results in his conviction. This use of the courts should not be tolerated.

SOLFISBURG, C.J., and KLINGBIEL, J., join in this dissent.