(No. 57925.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHARLES WASHINGTON, Appellee.

*Opinion filed January 20, 1984.—Rehearing
denied March 30, 1984.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, of Chicago and Michael E. Shabat, Joan S. Cherry, Bruce A. Cardello, and Harry John Devereux, Assistant State's Attorneys, of counsel), for the People.

Robert K. Mayer, of Chicago (Jack Toporek, Shelly Waxman, and Richard J. Salas, of Chicago, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

Charles Washington was convicted by a jury in the circuit court of Cook County of the murder of Nathan Bottley (Ill. Rev. Stat. 1979, ch. 38, par. 9—1) and was given a sentence of 28 years. The appellate court (111 Ill. App. 3d 711) reversed, holding that the defendant was denied effective assistance of counsel. The court ordered a new hearing on the defendant's pretrial motions and a new trial. We granted the State's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

In November 1977, Albert Johnson was shot to death in Chicago Heights. The defendant, a Chicago Heights resident, was a suspect in that shooting, but was not arrested. On May 7, 1979, Nathan Bottley, the brother-in-law of the defendant, was shot and killed in a truck garage in Chicago. Chicago police, acting on information that the defendant had previously threatened Bottley and on two eyewitness accounts of the murder, made inquiries of Chicago Heights police regarding the defendant. Chicago Heights police officers re-interviewed witnesses to the November 1977 murder of Albert Johnson and on May 16, 1979, on the basis of the information gained from the re-interviews, a Chicago Heights officer arrested the defendant for the murder of Albert Johnson. The prosecution for the murder of Johnson was pending at the time of the conviction from which the appeal here was taken.

The defendant was first taken to the Chicago Heights police station and questioned about the Johnson and Bottley murders. Thereafter, the defendant was taken to Chicago and placed in a lineup where two eyewitnesses identified him as the man who shot Nathan Bottley. The defendant was charged with the Chicago murder and then returned to the Chicago Heights police station. The grand jury later returned an indictment against the

defendant for the murder of Nathan Bottley.

The defendant filed pretrial motions, claiming his arrest in Chicago Heights was without probable cause and that the lineup identifications should be suppressed. A consolidated pretrial hearing was held on the motions. The defendant was represented at the hearing on pretrial motions he filed and at trial by an attorney, Thomas Helsel, who served as the city attorney for Chicago Heights on a part-time basis. At the hearing, the assistant State's Attorney brought the defense attorney's other employment to the attention of the trial court. There was this colloquy in the defendant's presence:

"ASSISTANT STATE'S ATTORNEY: Judge, also I would like to put something in the record right now. I have discussed it with counsel before.

I would like the Court to be aware of, and let the record be perfectly clear that Mr. Helsel, who represents the defendant in this matter, is the City Attorney for the City of Chicago Heights.

THE COURT: I know that.

ASSISTANT STATE'S ATTORNEY: I want it on the record, to make sure there was no conflict in the future, and that this matter of course, of the allegation that it happened in the City of Chicago, and not in Chicago Heights. I want the record to be clear that he is the prosecutor for the City of Chicago Heights.

DEFENSE ATTORNEY: Judge, if Counsel would like it a matter of record, I can go one step further. I made my client aware of this situation before I even undertook to represent him in this matter. The point came up after I had been retained to represent him. At that point in time, I interviewed him and advised him that I could no longer represent him on the Chicago Heights matter. I indicated if he desired for me to continue to represent him on the Chicago matter, that I anticipated no Chicago Heights Police Officers to be called. I feel I could, which he indicated he had no objection. Since that, I have withdrawn from the Chicago Heights matter.

ASSISTANT STATE'S ATTORNEY: Fine, Judge, so it is perfectly clear.

THE COURT: Mr. Washington, you have no objection to Counsel representing you in this matter?

THE DEFENDANT: No, Judge."

At the hearing, the State called a Chicago Heights police officer to establish that there was probable cause for the defendant's arrest in Chicago Heights on the Johnson charge. The defendant's attorney cross-examined this officer and then called another Chicago Heights officer as a rebuttal witness. The court, in denying defendant's motions, held that there was probable cause for the arrest on the Chicago Heights murder, based principally on the testimony of the two Chicago Heights police officers. The court also rejected defense complaints of the lineup identification of the defendant at the Chicago police station, holding that the defendant had remained in the custody of the Chicago Heights police until a warrant was issued in the Bottley prosecution. The defendant was found guilty of the murder of Bottley.

On appeal the appellate court upheld the defendant's contention that he was denied effective assistance of counsel because of his attorney's conflict of interest. The defendant contended that his attorney, serving as a Chicago Heights prosecutor, was forced to represent inconsistent interests, since the legality of the defendant's arrest and identification rested upon the testimony of Chicago Heights police officers. In reversing, the appellate court stated that "[s]ince the nature and duties of a public prosecutorial position are inherently incompatible with those of criminal defense when the employer-municipality is involved in the case in any significant way, we conclude that defendant was denied effective assistance of counsel here." 111 Ill. App. 3d 711, 716.

An accused's sixth amendment right to effective assistance of counsel is a fundamental right. (*Cuyler v. Sullivan*

(1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) The assistance of counsel means assistance which entitles an accused to the undivided loyalty of his counsel and which prohibits the attorney from representing conflicting interests or undertaking the discharge of inconsistent obligations. (*People v. Franklin* (1979), 75 Ill. 2d 173; *People v. Kester* (1977), 66 Ill. 2d 162; *People v. Stoval* (1968), 40 Ill. 2d 109.) In order to assure and protect these rights, the defendant need not show prejudice in order to justify a reversal of his conviction if the attorney representing him has an actual or possible conflict of professional interests. *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Robinson* (1979), 79 Ill. 2d 147; *People v. Fife* (1979), 76 Ill. 2d 418; *People v. Coslet* (1977), 67 Ill. 2d 127; *People v. Stoval* (1968), 40 Ill. 2d 109.

In *People v. Stoval* (1968), 40 Ill. 2d 109, the defendant's court-appointed counsel was a member of a law firm that had represented both the corporation that owned the jewelry store which the defendant was accused of burglarizing and the individual who operated the store. The attorney had also individually represented the corporation and the store's operator, before the law firm's representation of them. In reversing the defendant's conviction, this court held that sound policy prohibited representation by an attorney with the possible conflict of interests that was shown. The court was concerned by the subliminal effects of the conflict on counsel and, citing *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, stated that in such a case "there is no necessity for the defendant to show actual prejudice." (*People v. Stoval* (1968), 40 Ill. 2d 109, 113.) *Stoval* was referred to as establishing a *per se* rule in *People v. Coslet* (1977), 67 Ill. 2d 127.

In *Coslet,* the defendant, who was accused of murdering

her husband, was represented by counsel who also represented the administrator of the husband's estate. The attorney had a duty to preserve the assets of the estate and a duty as well to represent the interest of the wife in the prosecution. The conviction of the wife would have benefited the estate, since the wife by statute would not be accorded the rights of a surviving joint tenant. This court, saying it was applying the *Stoval per se* rule, held that this possibility, that the defendant's conviction might enrich her husband's estate, required reversal of the defendant's conviction of voluntary manslaughter. The application of the *per se* rule is illustrated too in *People v. Kester* (1977), 66 Ill. 2d 162. There, a court-appointed assistant public defender, who represented the defendant at the time his guilty pleas were accepted, had appeared earlier on three occasions in the same criminal proceeding as an assistant State's Attorney. Observing that defense counsel's former association could influence his conduct by a "subconscious desire to avoid an adversary confrontation with the prosecution," this court reversed the conviction on the "possibility that the attorney might be subject to subtle influences which could be viewed as adversely affecting his ability to defend his client in an independent and vigorous manner." 66 Ill. 2d 162, 167.

The State contends that we should not apply our *per se* rule on attorney conflicts of interest in light of *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708, where the Supreme Court stated:

> "[T]he multiple representation in this case involved a possible conflict of interest. We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." (446 U.S. 335, 350, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708, 1719.)

The State, in urging us not to apply the so-called *per se* test, but to adopt the "actual conflict" test in *Cuyler* overlooks the fact that *Cuyler* involved multiple representation of defendants. This court's holdings already make it clear that where a defendant alleges ineffective assistance of counsel due to conflicts arising from joint representation of codefendants, the *per se* standard is not applicable. (*People v. Berland* (1978), 74 Ill. 2d 286, 304; *People v. Echols* (1978), 74 Ill. 2d 319.) In cases where codefendants are jointly represented by one attorney, a defendant must demonstrate "an actual conflict of interest manifested at trial" in order to claim a denial of effective assistance of counsel. (*People v. Nelson* (1980), 82 Ill. 2d 67; *People v. Robinson* (1979), 79 Ill. 2d 147; *People v. Vriner* (1978), 74 Ill. 2d 329, 341.) When an actual conflict has been shown, it is unnecessary to demonstrate prejudice in order to sustain a claim of violation of the right to the assistance of counsel. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Stoval* (1968), 40 Ill. 2d 109.) The approach in joint representation cases is different from the *per se* rule because, as was recognized in *Cuyler*, "a possible conflict inheres in almost every instance of multiple representation." 446 U.S. 335, 348, 64 L. Ed. 2d 333, 346, 100 S. Ct. 1708, 1718.

Turning to the facts here, we agree that the defendant was denied effective assistance of counsel. The defendant's attorney had an obligation to vigorously defend the accused, which included here the simultaneous obligation to oppose and to attempt to discredit a police officer and representative of the municipality he was serving as its prosecutor.

The appellate court described the dilemma: "[W]hen a city prosecutor acts as defense counsel in a case where his own city police officers are involved, a struggle inevitably arises between counsel's obligation to represent his client

competently and zealously, and 'a public prosecutor's natural inclination not to anger the very individuals whose assistance he relies upon in carrying out his prosecutorial responsibilities.' " (111 Ill. App. 3d 711, 715, quoting from *People v. Rhodes* (1974), 12 Cal. 3d 180, 184, 524 P.2d 363, 366, 115 Cal. Rptr. 235, 238.) Here, contrary to the attorney's expectation, a Chicago Heights police officer was called as a witness for the prosecution. The attorney was obliged to cross-examine and attempt to discredit one of the officers whose veracity and credibility he vouched for when acting as a prosecutor for his municipality. Certainly the possibility was raised that the attorney's duty of undivided loyalty to the accused was affected by contradicting obligations.

The defendant in *People v. Fife* (1979), 76 Ill. 2d 418, was convicted of unlawful delivery of cannabis. The defendant was represented by an attorney who was also a special assistant Attorney General handling unemployment compensation cases for the State on a part-time basis. The defendant conceded that his counsel was diligent in his defense, but he argued he was denied effective assistance due to his counsel's possible conflict of interest. This court applied the *per se* rule in reversing the conviction due to "the possible, perhaps subliminal pressure a defense counsel who is also a special assistant for workmen's compensation cases might receive from the Attorney General's office." (76 Ill. 2d 418, 424-25.) The concern here, too, is the subtle and subconscious pressure the suggested conflict may have had on counsel.

The State argues that, even if a conflict of interest did exist, the colloquy in the courtroom, quoted above, shows that there was a knowing and voluntary waiver by the defendant of the right to the assistance of counsel free from any possible conflict of interest. It is, of course, true that the right to effective assistance of counsel assured by the sixth amendment is subject to being waived by an ac-

cused. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Robinson* (1979), 79 Ill. 2d 147, citing *United States v. Alvarez* (5th Cir. 1978), 580 F.2d 1251; *People v. Friedrich* (1960), 20 Ill. 2d 240.) A court, however, will indulge in every reasonable presumption against waiver of a constitutional right. (*Brewer v. Williams* (1977), 430 U.S. 387, 404, 51 L. Ed. 2d 424, 440, 97 S. Ct. 1232, 1242; *People v. Fife* (1979), 76 Ill. 2d 418, 423.) In order to ascertain if there has been an intelligent waiver of the right to the assistance of counsel, one should look to the circumstances surrounding the claimed waiver and consider the background, experience and conduct of the accused. *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.

We judge that here there was not a knowing and understanding waiver by the defendant. The defense attorney's statement to the trial judge showed his awareness of a possible conflict of interest if officers of the Chicago Heights police department were to appear as witnesses. The record does not show any explanation to the defendant at the time of his statement of willingness to have the attorney serve as his counsel, or later, when the Chicago Heights police officers were called as witnesses, why there could be a conflict of interest and how it might affect his representation by the attorney. Further, there is nothing to show that, because of his education and background, the defendant understood the nature of an attorney's conflict of interest and its possible effect upon the representation of a client. The State's response to this is that no explanation of the conflict here had to be given the defendant because the possibility of conflict was apparent and must have been understood by the defendant. The response does not satisfy. We consider that the question here involving possible subliminal effects upon representation of a client's interest and of waiver was not plain and simple. In fact, the questions typically are not simple, and explaining ade-

quately the effect of a conflict to the one represented may present severe difficulties. This was illustrated in *People v. Meyers* (1970), 46 Ill. 2d 149, 152: "[I]t is difficult, if not impossible, to satisfactorily advise a defendant of the subtle effect which a conflict of interests may have upon *** counsel's representation."

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*