NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210220-U

NO. 4-21-0220

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 1, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JAMES L. BERRY, | ) | No. 15CF1146 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

---

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where defense counsel had a *per se* conflict of interest, defendant is entitled to a
new trial because he did not knowingly waive his right to conflict-free counsel.

¶ 2    In November 2015, the State charged defendant, James L. Berry, by information
with one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West Supp.
2015)) and one count of possession of a controlled substance (720 ILCS 570/402(c) (West
2014)). The next month, the State filed a motion to add one count of indecent solicitation of a
child (720 ILCS 5/11-6(a) (West 2014)) and one count of sexual exploitation of a child under 13
(720 ILCS 5/11-9.1(a)(2) (West 2014)), which the Sangamon County circuit court granted in
June 2017. After a November 2020 jury trial, the jury found defendant not guilty of indecent
solicitation of a child but guilty of the three other charges. Defendant filed a motion to vacate
the judgment of conviction or, in the alternative, grant defendant a new trial. After a hearing, the

court denied defendant's posttrial motion. At the sentencing hearing, the court found defendant was subject to Class X sentencing on his aggravated criminal sexual abuse conviction and sentenced defendant to concurrent prison terms of 28 years for aggravated criminal sexual abuse, 3 years for possession of a controlled substance, and 3 years for sexual exploitation of a minor. Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 3 Defendant appeals, contending (1) he is entitled to a new trial because trial counsel operated under a *per se* conflict of interest, (2) he was denied effective assistance of counsel because trial counsel failed to move to dismiss the sexual exploitation of a minor count based on a statutory speedy-trial violation, and (3) the circuit court erred by sentencing defendant as a Class X offender. We reverse and remand.

¶ 4                                I. BACKGROUND

¶ 5 On November 12, 2015, the State charged defendant by complaint with aggravated criminal sexual abuse, alleging he was 17 years of age or older and knowingly touched the breasts of A.R., who was under 13 years old, for the purpose of defendant's sexual arousal or gratification. The complaint also charged defendant with possession of a controlled substance for possessing less than 15 grams of cocaine. The State later filed an information charging the same two counts. On December 23, 2015, the State filed a motion to add two additional charges against defendant. The State sought to charge defendant with one count of indecent solicitation of a child and one count of sexual exploitation of a child under 13. It contended the proposed counts arose from the same transaction or conduct of defendant as that charged in the information because the evidence supporting all three counts alleging sexual conduct were essentially the same. The court did not address the State's motion until June 21, 2017. The trial court allowed the motion over defendant's objection, and the new charges were

filed that day. Also, on that date, the State filed a memorandum to admonish defendant he was subject to Class X sentencing if he was found guilty of aggravated criminal sexual abuse.

¶ 6    In September 2017, the State filed a notice of intent to use hearsay evidence pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2014)). Specifically, the State sought to introduce statements A.R. made shortly after the incident on November 6, 2015, to (1) Tiffany R., A.R.'s mother; (2) Tamika Reeves, Tiffany R.'s significant other; and (3) Tashaunna Kirk, Reeves's daughter. It also sought to admit A.R.'s statements to Lindsay Reichert during a forensic interview on November 10, 2015. In October 2019, the trial court held a hearing at which the aforementioned people testified. The matter was continued until January 2020. After hearing the parties' arguments, the court found A.R.'s statements would be admissible at defendant's trial.

¶ 7    At the final pretrial hearing on October 1, 2020, the prosecutor informed the trial court of defense counsel's contemporaneous representation of defendant and Kirk, one of the State's witnesses. The following dialogue took place:

> MR. SHAW [(ASSISTANT STATE'S ATTORNEY)]: So it's come to the State's attention, Mr. Vig actually brought it to our attention, and I appreciate that, that Mr. Vig, during the time of this case, actually—and once again, I'm not looking—I'm not saying that there is—somebody's at fault of this, I think it was something that just occurred. However, Mr. Vig ended up representing one of the witnesses in the case during the time of the—during the time that he had [defendant]'s case. He indicates to us that his representation of that person, the totality of it, has been taken care of. It was a civil litigation matter, not a criminal matter.

- 3 -

I will take it on face that he wasn't—if he was discussing or he has some form of information that he would have tendered it to me in regards to anything outside of, you know, what is in the police reports. He indicates to me that he's talked to [defendant] about this. He doesn't believe that there needs to be any form of waiver at this point in time.

THE COURT: Is that accurate?

MR. VIG [(DEFENSE ATTORNEY)]: Yes, Judge. I have talked with it, and in fairness, my client, just as I've disclosed to the State once it came to my attention, that I had at one point in time represented Miss Kirk. Again, it was—it was a civil matter, it was negotiated and concluded. My representation of her, I am no longer representing her in anything, and it was completely unrelated to this case. I did not discuss with her her [*sic*] testimony or potential testimony in this case in any way, shape, or form. I didn't even realize that she was a witness until my representation of her was nearly concluded.

THE COURT: [Defendant], I assume you've had the opportunity to discuss that matter with Mr. Vig?

THE DEFENDANT: Yes, sir.

THE COURT: And once again, formally for the record, you see no issue, no problem, correct?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: All right. Yes, sir, Mr. Shaw."

¶ 8        In November 2020, the trial court commenced defendant's jury trial. The State presented the testimony of (1) Rhet Spengel, a Springfield police officer; (2) Donald Gillette, a

retired Springfield police officer; (3) Brittany Etchill, a Springfield police officer; (4) Tiffany; (5) Reeves; (6) Kirk; (7) Jim Stapleton, a former Springfield police detective; (8) Shaun Daubs, a Springfield police detective; (9) Reichert; (10) Julia Edwards, a forensic scientist with the Illinois State Police; and (11) A.R. The State also presented, *inter alia*, the recording of Reichert's interview of A.R. and the crack cocaine recovered during defendant's arrest. Defendant testified on his own behalf and recalled Officer Etchill. In rebuttal, the State called Michael Newman, a Springfield police officer. The evidence relevant to the resolution of this appeal follows.

¶ 9          Tiffany testified that, in November 2015, she lived in a two-bedroom apartment with A.R., Reeves, and Kirk. A.R. was 12 years old at the time and shared a bedroom with Kirk. Defendant was the father of Reeves's sister, and Tiffany and Reeves regularly played cards with defendant on the weekends. Defendant had been invited over to play cards on the night of November 6, 2015. A.R. and Kirk were in their bedroom while Tiffany, Reeves, and defendant drank alcohol and played Spades. At some point, they took a break from playing cards, and defendant said he was going to the bathroom. Tiffany was in the kitchen and did not see where he went. Reeves was in the living room changing music on compact discs. After Tiffany was done making drinks, she yelled at defendant because he was taking a long time. A little while later, A.R. ran out of her bedroom holding her breast, and stated, "Mom, what is wrong with [defendant], he grabbed my breasts real hard." Tiffany yelled defendant's name and asked A.R. if she was okay. Tiffany then observed defendant coming out of A.R.'s bedroom. Tiffany testified the belt on defendant's pants was hanging open and defendant's pants were not zipped. When Tiffany asked defendant why he would do that to A.R., he said he did not do anything. At that point, Tiffany took A.R. to Tiffany's bedroom, and Reeves got defendant to leave the apartment. Tiffany went to the bathroom where she could smell crack cocaine. Tiffany then

called the police.

¶ 10 Reeves's testimony was similar to Tiffany's. Reeves described A.R.'s emotional state when she exited her bedroom as "in shock and hysterical and very upset." Reeves also noted defendant's pants were unbuckled and his fly was unzipped when he exited the bedroom. Additionally, Reeves testified both Kirk and A.R. stated defendant had jumped in the closet and exposed himself. When Reeves asked defendant why he was in the girls' bedroom, he denied being in the room and doing anything to A.R.

¶ 11 Kirk testified she woke up to noise and yelling in the evening hours of November 6, 2015. When she woke up, Kirk saw defendant behind the door to the bedroom she shared with A.R. She also noticed the items in her closet were "messed up like someone had tried to like fit in there." Kirk left the bedroom and went to where she heard the noise. Kirk heard A.R. state defendant had touched her breasts and exposed himself to her. Kirk assisted her mother in getting defendant out of the apartment. Vig did cross-examine Kirk, his former client.

¶ 12 A.R. testified, on the evening of November 6, 2015, she was watching YouTube videos in her bedroom with the door closed. Kirk was asleep in the bedroom, and the lights were turned off. While she was in the bedroom, defendant opened the bedroom door and came into the room. He tried to turn on the lights but could not. A.R. got out of her bed and turned the lights on. She asked defendant what he was doing. Defendant walked towards her and pinched her left breast. Defendant's speech was slurred, and he told A.R. to come with him to the closet. Defendant went into the closet. There, he pulled down his pants and was touching his privates. A.R.'s mom called for defendant, and A.R. ran out of the bedroom. She saw Reeves first and told her defendant had touched her breast.

¶ 13 Officer Etchill testified she was supervising Officer Johnny Boyd, who was a

trainee, when they received a dispatch to an apartment building at around 9:30 p.m. on November 6, 2015. When they arrived at the apartment building, only one man was standing in the parking lot, and they later identified the man as defendant. According to Officer Etchill, defendant looked "a little disheveled" with the fly on his pants halfway down and the top button of his pants unbuttoned. Officer Boyd patted defendant down to see if he had weapons or drugs. Officer Boyd felt items in defendant's pocket and began removing them. One item was a balled-up napkin. Inside the napkin was a white plastic baggy containing a white chunky substance. Officer Etchill testified the chunky substance was about the size of a pea. Defendant grabbed the substance and began to grind it between his fingers. After defendant was taken into custody, Officer Etchill collected as much of the remaining substance as she could.

¶ 14    Officer Spengel testified he received a white powdery rock substance in a plastic bag and a piece of aluminum foil from Officers Etchill and Boyd. He booked the items as State's exhibit No. 1, which he described as a "white rock like substance, suspected crack" and State's exhibit No. 2, which he described as "[a]luminum foil, plastic baggy corners."

¶ 15    Edwards testified she weighed the substance contained in State's exhibit No. 1. The substance weighed 0.008 of a gram. After testing the substance, Edwards opined the substance contained cocaine.

¶ 16    At the conclusion of the trial, the jury found defendant guilty of possession of a controlled substance, aggravated criminal sexual abuse, and sexual exploitation of a child but not guilty of indecent solicitation of a child.

¶ 17    On November 18, 2020, defense counsel filed a motion to vacate the judgment of conviction or, in the alternative, grant defendant a new trial. Defendant then filed *pro se* several posttrial motions, including a request for a hearing under *People v. Krankel*, 102 Ill. 2d 181, 464

N.E.2d 1045 (1984). In January 2021, the trial court held a *Krankel* hearing and concluded defendant's claims lacked merit and the appointment of new counsel was not warranted. At a March 9, 2021, hearing, defense counsel did not adopt defendant's other posttrial motions, and the trial court only addressed defense counsel's posttrial motion, which it denied.

¶ 18 After denying defense counsel's posttrial motion, the circuit court commenced the sentencing hearing. Defendant objected to the State's certified statement of conviction because it did not list an offense date for defendant's murder conviction. Defendant believed he committed the murder in 1977, which would make the offense too old to serve as a basis for Class X sentencing. See 730 ILCS 5/5-4.5-95(b)(1) (West 2014). The court continued the sentencing hearing to give the State time to locate the date of the offense. At the continued hearing, the prosecutor noted the law enforcement automated data system listed an offense date of September 13, 1978. A sheet from the Chicago Police Department listed an arrest date of October 19, 1978. Defense counsel again objected to Class X sentencing. The court found defendant was subject to Class X sentencing. After hearing the parties' arguments and defendant's statement of allocution, the court sentenced defendant to concurrent prison terms of 28 years for aggravated criminal sexual abuse, 3 years for possession of a controlled substance, and 5 years for sexual exploitation of a child. Defendant filed a motion to reconsider his sentence, which the court denied after an April 6, 2021, hearing.

¶ 19 On April 19, 2021, defendant filed his timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). Accordingly, this court has jurisdiction of defendant's convictions and sentences under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 20                                        II. ANALYSIS

¶ 21                    A. *Per Se* Conflict of Interest

¶ 22           Defendant asserts his trial counsel operated under a *per se* conflict of interest because counsel contemporaneously represented one of the State's witnesses in a civil matter. The State concedes defense counsel had a *per se* conflict of interest but contends defendant waived the conflict. Defendant disagrees he waived the *per se* conflict. Given the facts on this issue are undisputed, our standard of review is *de novo*. See *People v. Fields*, 2012 IL 112438, ¶ 19, 980 N.E.2d 35.

¶ 23           We agree with the parties Vig, defendant's trial counsel, had a *per se* conflict of interest. Our supreme court has identified three situations where a *per se* conflict exists: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved in the prosecution of defendant." *People v. Taylor*, 237 Ill. 2d 356, 374, 930 N.E.2d 959, 971 (2010). When referring to the second situation, the supreme court does not add "the qualifier 'contemporaneous representation *during trial*.' " (Emphasis in original.) *People v. Murphy*, 2013 IL App (4th) 111128, ¶ 74, 990 N.E.2d 815 (quoting *Fields*, 2012 IL 112438, ¶¶ 18, 20, 22, 24, 25, 29). Here, Vig admitted he represented Kirk, a State witness, in an unrelated civil matter while he represented defendant in this case.

¶ 24           With a *per se* conflict of interest, prejudice is presumed, and "the remedy is automatic reversal unless the client waives the conflict." *In re Br. M.*, 2021 IL 125969, ¶ 46, 182 N.E.3d 693. The State argues the record shows defendant made a knowing and voluntary waiver of his right to the assistance of counsel free from any possible conflict of interest. However, a court will indulge in every reasonable presumption against waiver of a constitutional right.

*People v. Washington*, 101 Ill. 2d 104, 114, 461 N.E.2d 393, 398 (1984).  A defendant's waiver of conflict-free counsel must be knowing.  *People v. Olinger*, 112 Ill. 2d 324, 339, 493 N.E.2d 579, 587 (1986).  A reviewing court will not find a defendant has waived a conflict unless the defendant is admonished as to the existence of the conflict and its significance.  *Olinger*, 112 Ill. 2d at 339, 493 N.E.2d at 587.  The record must reveal the defendant was informed of the significance of the possible conflict so he or she "might understand how it could affect, *even subtlely* [*sic*], his [or her] representation." (Emphasis added.)  *People v. Lawson*, 163 Ill. 2d 187, 218, 644 N.E.2d 1172, 1187 (1994).  To ascertain whether the defendant has made an intelligent waiver of the right to the assistance of counsel, courts look to the circumstances surrounding the claimed waiver and consider the defendant's background, experience, and conduct.  *Washington*, 101 Ill. 2d at 114, 461 N.E.2d at 398.

¶ 25        In this case, defense counsel, Vig, disclosed to the State he had represented Kirk, a witness for the State, in a civil matter while defendant's criminal case was pending.  The State noted the conflict at the final pretrial hearing, and Vig explained he had disclosed to defendant he had represented Kirk in a civil matter that was negotiated and concluded.  Vig was no longer representing Kirk at the time of the final pretrial hearing.  Vig explained his representation of Kirk was completely unrelated to this case and he did not discuss with Kirk her testimony or potential testimony in this case.  The circuit court confirmed with defendant he had spoken with Vig about the matter.  The court then had defendant state on the record he had no problem or issue with Vig's representation of Kirk.  The court gave defendant no admonishments and did not discuss the conflict or its significance with defendant.  While the prosecutor's and Vig's statements at the hearing informed defendant of the conflict, the discussion on the record did not inform defendant of the significance of the conflict.  In fact, their representation of the situation

indicated the conflict had no significance.

¶ 26 The State contends the record supports a finding defendant had knowledge of the significance of Vig's prior representation of Kirk. It notes Vig stated he discussed the matter with defendant outside of court, and the trial judge confirmed counsel did so. Additionally, the State points out Vig stated at the *Krankel* hearing, he never felt defendant was not informed about the nature of the statements about which the witnesses would testify.

¶ 27 However, in *People v. Poole*, 2015 IL App (4th) 130847, ¶¶ 35-36, 39 N.E.3d 1086, this court found the defendant did not waive his right to conflict-free counsel, despite the fact the defendant had signed a written waiver stating he understood his attorney's other client in an unrelated case could be called as a witness to testify against him. There, the circuit court did not learn of the conflict until after the defendant's conviction, and thus the court never had the opportunity to admonish the defendant about the potential consequences of the dual representation. *Poole*, 2015 IL App (4th) 130847, ¶ 35. This court found the written waiver inadequate because there was no way of knowing what defense counsel told the defendant at the time he signed the waiver. *Poole*, 2015 IL App (4th) 130847, ¶ 36. We noted it could not "be said, *on this record*, the defendant was adequately informed of the significance of the conflict." (Emphasis added.) *Poole*, 2015 IL App (4th) 130847, ¶ 36 (citing *People v. Stoval*, 40 Ill. 2d 109, 114, 239 N.E.2d 441, 444 (1968)). Specifically, the record did not reveal whether the defendant was advised of the conflict in a way he might understand how it could affect his representation. *Poole*, 2015 IL App (4th) 130847, ¶ 36.

¶ 28 As in *Poole*, the record does not reveal what Vig told defendant when Vig realized Kirk was going to be a witness in defendant's trial. Given the trial court did not admonish defendant about the significance of the conflict and the substance of Vig's

- 11 -

conversation with defendant is unknown, we find the record does not reveal defendant understood how the "conflict could affect, sometimes subtly," Vig's representation of him. *Stoval*, 40 Ill. 2d at 114, 239 N.E.2d at 444. Accordingly, we find defendant did not knowingly waive his right to conflict-free counsel, and thus we reverse defendant's convictions and sentences and remand for a new trial. See *Poole*, 2015 IL App (4th) 130847, ¶ 37.

¶ 29                                    B. Double Jeopardy

¶ 30        Since we have found remand for a new trial is warranted, double jeopardy concerns are raised, and we must consider the sufficiency of the evidence. *People v. Lopez*, 229 Ill. 2d 322, 367, 892 N.E.2d 1047, 1072-73 (2008). "The relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lopez*, 229 Ill. 2d at 367, 892 N.E.2d at 1073. Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of aggravated criminal sexual abuse, possession of a controlled substance, and sexual exploitation of a minor. Thus, we do not find a double jeopardy impediment to retrial.

¶ 31        As to defendant's claim of a speedy-trial violation, we need not address it at this time and presume the parties will do so on remand. Additionally, should defendant be retried and found guilty of aggravated criminal sexual abuse, we trust the parties will sufficiently address whether defendant is subject to Class X sentencing.

¶ 32                                    III. CONCLUSION

¶ 33        For the reasons stated, we reverse defendant's convictions and sentences and remand the cause to the Sangamon County circuit court for a new trial on the charges of aggravated criminal sexual abuse, possession of a controlled substance, and sexual exploitation

of a minor.

¶ 34          Reversed and remanded.