NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210427-U

NO. 4-21-0427

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 6, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| TYLER ABBOTT, | ) | No. 19CM124 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Glenn, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because defendant's plea proceedings were shrouded in impropriety due to an undisclosed *per se* conflict of interest, the trial court erred in denying defendant's motion to withdraw his guilty plea.

¶ 2    Defendant, Tyler Abbott, appeals from the trial court's order denying his motion to withdraw his guilty plea, the grounds for which was a claim of a *per se* conflict of interest in the plea proceedings. We reverse and remand for further proceedings.

¶ 3                          I. BACKGROUND

¶ 4    On March 26, 2019, the State charged defendant with one count of domestic battery, a Class A misdemeanor, alleging, on March 25, 2019, he caused bodily harm to Harley Abbott by punching her in the face, causing a cut above her eye. See 720 ILCS 5/12-3.2(a)(1) (West 2018). On the same day, defendant appeared in custody before the trial court. The court set

bond and appointed the public defender, Terese Matthews. On March 27, 2019, defendant posted bond and was released from custody.

¶ 5        On April 3, 2019, at his initial appearance and on the advice of Matthews, defendant pleaded guilty to domestic battery and was sentenced to two years' probation and 180 days in jail pursuant to the plea agreement. Unbeknownst to defendant at the time, Matthews was the mother of Magdalene "Maggie" Wilson, the assistant state's attorney assigned to the case. That is, mother and daughter negotiated the terms of defendant's plea agreement.

¶ 6        Presumably because, according to the record, the trial court had failed to admonish defendant of his rights and obligations associated with the entry of that plea and the possibility of taking any appeal therefrom, defendant did not file any postplea motion or direct appeal.

¶ 7        As a result of a July 2020 petition to revoke defendant's probation, new counsel was appointed at which time defendant was made aware of the relationship between Matthews and Wilson. In August 2020, defendant, by counsel, filed a postconviction petition, seeking relief pursuant to sections 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)) and 122-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/122-1 (West 2018)). Defendant alleged he had recently discovered that his plea counsel was operating under a conflict of interest at the time she was advising defendant regarding the State's offer and the plea-agreement terms. He sought to have his conviction vacated, claiming he was actually innocent, a fact of which he had allegedly advised Matthews.

¶ 8        Defendant attached to his petition an affidavit filed in a similarly situated Coles County case from Honorable Brien J. O'Brien, a Coles County circuit judge, who acknowledged knowing about the mother-daughter relationship and who had inquired of the Coles County State's Attorney, Jesse Danley, about the potential of a conflict of interest. According to Judge O'Brien,

Denley advised he or someone in his office "had looked into the issue and that there was no conflict of interest."

¶ 9    Judge O'Brien's affidavit also noted he had posed the question of a potential conflict of interest to Matthews, who advised "she did not anticipate having any problems working with (or against) her daughter and that she was not aware of there being a conflict of interest."

¶ 10    Relying on these opinions, Judge O'Brien continued to preside over "numerous [criminal misdemeanor] cases" with the mother and daughter on opposing sides. He stated: "At no time did I believe that the mother-daughter relationship between ASA Wilson and Ms. Matthews had any impact upon the manner in which a case was resolved. I did not believe that any defendant represented by [the mother] and prosecuted by [the daughter] received treatment that was more favorable or less favorable than any other defendant similarly situated. In my judgment, all interactions between [daughter] and [mother] were professional and appropriate." Judge O'Brien never advised any defendant of the familial relationship.

¶ 11    In October 2020, the State filed a motion to dismiss, claiming defendant was precluded from claiming actual innocence after "knowingly and voluntarily" pleading guilty. In an amended motion to dismiss, the State added (1) defendant's postconviction petition was untimely since he did not file his petition within four months after the guilty plea entered in his misdemeanor case (see *People v. Warr*, 54 Ill. 2d 487, 493 (1973)) and (2) his petition was insufficient as a matter of law.

¶ 12    On December 1, 2020, the trial court conducted a hearing on the State's amended motion to dismiss. After considering arguments, the court dismissed and struck defendant's postconviction petition as untimely but allowed defendant leave to file an amended section 2-1401 petition.

¶ 13　　　　　On December 29, 2020, defendant filed a motion to set aside judgment pursuant to section 2-1401, asking the trial court to "re-open" his postconviction petition based on the fraudulent concealment of the *per se* conflict of interest and his claim of actual innocence. Defendant attached several documents in support of his conflict-of-interest claim. In response, the State filed a motion to dismiss.

¶ 14　　　　　At a March 1, 2021, hearing, the trial court considered the State's motion to dismiss. The court indicated it was "going to address the conflict of interest issue" and held defendant failed to establish that his plea counsel "was laboring under a conflict of interest." The court stated: "Her representation of the [d]efendant was not directly adverse to any other client and representation of the [d]efendant was not limited in anyway by any personal interests." Referring to Comment 11 of Rule 1.7 of the Illinois Rules of Professional Conduct of 2010, the court found "in this instance," there was no significant risk of the family relationship interfering with counsel's loyalty or independent professional judgment. Ill. R. Prof'l Conduct R.1.7 cmt. 11 (eff. Jan. 1, 2010).

¶ 15　　　　　However, the trial court found defendant *had* alleged the existence of a meritorious defense sufficient to allow his section 2-1401 motion to survive dismissal. Defendant indicated he had new evidence in the form of a text message acknowledging he was not the aggressor in the domestic-battery incident. The court stated: "Therefore, for those reasons, and those reasons only, not anything having to do with the alleged conflicts of interests, uh, the Motion to Dismiss the Motion [to] Set Aside Judgment is denied and we can go forward."

¶ 16　　　　　On March 8, 2021, defendant filed an amended motion to set aside judgment and vacate his guilty plea, alleging (1) new evidence supporting his claim of actual innocence and (2) he was never admonished of his right to vacate his guilty plea.

¶ 17        On May 28, 2021, the trial court conducted a hearing on defendant's amended motion. The trial court heard evidence regarding defendant's discovery of a text message sent from the victim to her friend arguably exculpating defendant.

¶ 18        Defendant testified Matthews did not tell him that her daughter was the prosecuting attorney. He said if he had known, he would have taken a different course of action.

¶ 19        After considering the evidence, the trial court denied defendant's amended motion to set aside judgment, finding the text messages, although they could have been considered newly discovered evidence, were not "of such conclusive character that [they would] probably change the result."

¶ 20        With the State's concession, the trial court admonished defendant of his appellate rights since he had not been admonished upon entering his guilty plea. The court informed defendant he had 30 days to file a motion to withdraw his plea.

¶ 21        On June 22, 2021, defendant filed a motion to withdraw his guilty plea, alleging he was not aware his attorney was operating under a *per se* conflict of interest at the time she negotiated a plea deal with the State on his behalf. He claims the existence of a *per se* conflict of interest was automatic grounds for reversal. The State filed a response, arguing defendant's plea was knowing and voluntary, as he was unable to establish prejudice from his attorney's representation.

¶ 22        On July 7, 2021, after hearing the parties' arguments, the trial court ruled as follows:

> "Thank you. Of course the Court has heard—heard these issues and reviewed these issues before and made rulings thereon, and I'm considering the entire history of the case, allowing for arguments today and I understand

- 5 -

[defendant's counsel] indicating that [defendant]'s plea wasn't knowing and voluntary because he didn't know that his attorney was the mother of the prosecutor, but I have determined based on the facts that have been presented through written allegations, and keep in mind there were a number of attachments from the discovery that's been done, but there is not a *per se* conflict of interest under a situation like that. Uh, and I studied Comment 11 of Rule 1.7 of the rules that [defendant's counsel] reread for me and really my interpretation is that in some cases there may be a significant risk that a family relationship may interfere with the validity or independent professional judgment. And, of course, none of us have been present whenever mother and daughter were together at various gatherings, but there is nothing presented in the numerous pages that have been submitted, which includes e-mails between the two, that would suggest that there was some— some agreement to make one look better than the other. There just wasn't anything there. Ordinarily, according to that comment, a parent of opposing counsel may not represent a client in a matter without the client giving informed consent. That find—I find before and I continue to find that on the basis of the materials that have been presented in support of the motion that that isn't the case here. The [p]etitioner hasn't shown it. So, in any event, the actual plea itself I realize that [defendant] did not know that his attorney was the mother of the prosecutor, but he still did receive a what I would consider a fair, fair deal. The only reason it doesn't look good now is because he has a pending felony case that is affected by his plea in the misdemeanor case, but at the time that was not an unreasonable deal. It *** is a reasonable plea agreement. And this Court questioned him, the Court of this County

questioned him, and he communicated that it was knowing and voluntary. So for those reasons, I find that the plea—that the Defendant has not shown that it wasn't free and voluntary. Therefore the Motion to Withdraw the Plea is denied."

¶ 23     This appeal followed.

¶ 24                              II. ANALYSIS

¶ 25                              A. Jurisdiction

¶ 26     Before addressing the merits of defendant's claim of error, we will address the State's argument that jurisdiction for this appeal is lacking. The State claims defendant's motion to withdraw his plea, filed two years after he pleaded guilty, was untimely, resulting in a jurisdictional bar for this court to consider his appeal. We disagree.

¶ 27     Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) provides, in relevant part:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court *** a motion to withdraw the plea of guilty and vacate the judgment."

¶ 28     The filing of a Rule 604(d) motion is a condition precedent to an appeal from a judgment on a plea of guilty. *People v. Wilk*, 124 Ill. 2d 93, 105 (1988). The discovery that a defendant has failed to file a timely Rule 604(d) motion in the circuit court does not deprive the appellate court of jurisdiction over a subsequent appeal. *In re William M.*, 206 Ill. 2d 595, 601 (2003). However, as a general rule, the failure to file a timely Rule 604(d) motion precludes the appellate court from considering the appeal on the merits. Where a defendant has failed to file a written motion to withdraw his plea of guilty or to reconsider his sentence, the appellate court must dismiss the appeal (*People v. Jamison*, 181 Ill. 2d 24, 28-29 (1998)), leaving the Post-Conviction

Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) as the defendant's only recourse (*People v. Foster*, 171 Ill. 2d 469, 471 (1996)).

¶ 29　　　　This rule is not without exceptions. Dismissal of an appeal based on a defendant's failure to file the requisite motion in a timely manner in the trial court would violate due process *if the defendant did not know that filing such motions was necessary*. See *Foster*, 171 Ill. 2d at 473. Accordingly, Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001) mandates the trial court advise defendants, at the time sentence is imposed, of the procedural steps Rule 604(d) requires them to take in order to appeal or to challenge his plea or sentence. If the trial court fails to give the admonishments set forth in Rule 605(b) and the defendant subsequently attempts to challenge his plea without first filing the motions required by Rule 604(d), any appeal is not dismissed. Instead, the appropriate course is to remand the cause to the trial court for strict compliance with Rule 604(d). *Foster*, 171 Ill. 2d at 474; *Jamison*, 181 Ill. 2d at 30; *People v. Flowers*, 208 Ill. 2d 291, 300-01 (2003). Although no appeal was filed challenging the plea until now, the State agreed, during the postplea proceedings in the trial court, that the correct remedy was for the court to properly admonish defendant pursuant to Rule 605(b) and allow defendant the opportunity to file a motion to withdraw his plea. The court did so on May 28, 2021, two years after defendant pleaded guilty. Defendant thereafter timely filed his motion to withdraw his plea.

¶ 30　　　　Based on the procedural posture of this case, this court would be remiss in dismissing defendant's appeal for lack of jurisdiction given the trial court's complete failure to admonish defendant pursuant to Rule 605(b). Therefore, we will consider the merits of defendant's appeal.

¶ 31　　　　　　　　B. *Per Se* Conflict of Interest

¶ 32        Defendant sought to withdraw his guilty plea because, unbeknownst to him, his attorney was operating under a claimed *per se* conflict of interest at the time she was negotiating the plea agreement with the State and counseling him regarding the terms and consequences thereof. Defendant later learned his attorney was the prosecutor's mother.

¶ 33        "A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation." *People v. Yost*, 2021 IL 126187, ¶ 36. "Illinois law recognizes two types of conflict of interest—actual and *per se*." *Id.* ¶ 37.

¶ 34        "A *per se* conflict of interest exists when specific facts about the defense attorney's status, by themselves, create a disabling conflict." *Id.* ¶ 39. Only three categories of *per se* conflict of interest exist under Illinois law: "(1) when defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant." *Id.* ¶ 66.

¶ 35        That is, "a *per se* conflict arises when defense counsel has a connection to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.* ¶ 39. The supreme court has determined the connection *must* be contemporaneous. *Id.* ¶ 65. If a *per se* conflict is found, the defendant is not required to show the conflict affected the attorney's actual performance. *Id.* ¶ 39. However, a "*per se* conflict of interest requires automatic reversal of a criminal conviction unless the defendant waives the conflict." *Id.* ¶ 1.

¶ 36        Although the parties in the trial court proceedings, including several circuit court judges, relied on the Rules of Professional Conduct to ultimately determine there was no conflict of interest in this case, we need not resort to an examination of Rule 1.7 or the comments associated therewith. It is sufficient to note that defendant's appointed attorney was the mother of the

prosecuting attorney and that no one disclosed this fact to defendant prior to the entry of his guilty plea. We can surmise no closer "contemporaneous association" between the defense and the prosecution than one of mother and child. Unlike a relationship between a client and counsel or an employer and employee, the familial relationship presented here is, and will be, forever ongoing. This ongoing relationship unquestionably satisfies the supreme court's requirement that the connection be contemporaneous. See *id.* ¶ 66

¶ 37　　　　　Further, it is unquestionable that defense counsel has a very clear connection with a person who "would benefit from an unfavorable verdict for the defendant." *Id.* ¶ 39. It is reasonable to assume a parent, such as defendant's counsel, whether expressly or implicitly, wants her daughter (the prosecutor here) to be successful. Unfortunately, in this instance, to do so, she must achieve a result which could be seen as unfavorable for defendant. Because such a desire on counsel's part would be difficult to gauge, our supreme court has created this *per-se*-conflict-of-interest concept, where one need only provide facts about a defense counsel's status, which, by themselves, or on their face, reveal a disabling conflict. See *People v. Spreitzer*, 123 Ill. 2d 1, 14 (1988).

¶ 38　　　　　Indeed, applying the supreme court's *per se* analysis to the specific facts of this case reveals that the justification for treating certain conflicts as *per se* can be exemplified by defense counsel's desire for her daughter to succeed, which, in turn, conflicts with her professional obligation to defendant. Such a conflict might " 'subliminally' affect counsel's performance in ways difficult to detect and demonstrate" (*id.* at 16 (citing *People v. Washington*, 101 Ill. 2d 104, 113 (1984))) or might possibly subject counsel to " 'later charges that [her] representation was not completely faithful' " (*id.* at 17 (quoting *People v. Stoval*, 40 Ill. 2d 109, 113 (1968))).

¶ 39    Presumably, defendant relied on counsel's advice when deciding whether to accept the negotiated plea. Now that he knows counsel's advice (1) may not have been in consideration of his best interests, as further demonstrated by counsel's failure to ensure he was properly admonished in relation to the plea, and (2) may have been tainted by counsel's desire for a favorable result for the prosecution, he should be entitled to withdraw his plea and proceed with conflict-free counsel.

¶ 40    Accordingly, we find this undisclosed *per se* conflict of interest is automatic grounds for reversal. That is, for these reasons, we find the trial court erred in denying defendant's motion to withdraw his guilty plea.

¶ 41                                III. CONCLUSION

¶ 42    For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

¶ 43    Reversed and remanded.